IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | NO. 3-08-CR-0012-B |
| | § | NO. 3-11-CV-1066-B-BD |
| STEVE KELBY SAMPLES | § | |
| | § | |
| Defendant. | § | |

## FINDINGS AND RECOMMENDATION OF THE
## UNITED STATES MAGISTRATE JUDGE

Defendant Steve Kelby Samples, a federal prisoner, has filed a motion to correct, vacate, or set aside his sentence pursuant to 28 U.S.C. § 2255. For the reasons stated herein, the motion should be denied.

I.

A federal grand jury indicted defendant on two charges related to the sexual exploitation of children. Count 1 of the indictment charged defendant with transporting and shipping child pornography in violation of 18 U.S.C. § 2252(a)(1). Count 2 of the indictment charged defendant with possessing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). After waiving a jury, defendant pled guilty to Count 2 of the indictment and was convicted on Count 1 following a bench trial. Punishment was assessed at 240 months confinement on Count 1 and 120 months confinement on Count 2, to be served concurrently, followed by a lifetime term of supervised release. His conviction and sentence were affirmed on direct appeal. *United States v. Samples*, 367 Fed.Appx. 512, 2010 WL 653719 (5th Cir. Feb. 22, 2010). Defendant now seeks post-conviction relief under 28 U.S.C. § 2255.

II.

Defendant raises three broad issues on post-conviction review: (1) his guilty plea to Count 2 of the indictment was involuntary; (2) he received ineffective assistance of counsel at trial and on appeal; and (3) his conviction was the result of a myriad of constitutional violations.

A.

A brief recitation of the facts is necessary to the disposition of the pending motion. On September 6, 2006, FBI Special Agent Jacqueline Dougher used an enhanced version of file sharing software to identify individuals sharing images depicting the sexual exploitation of children on peer-to-peer networks. (*See* Trial Tr. at 14-15, 30).[1] Using search terms commonly associated with child pornography, Dougher identified an internet protocol address in Greenville, Texas, that was sharing more than 1,500 files, including images of child sexual exploitation. (*See id.* at 30, 33-43). Dougher downloaded 32 images, a number of which matched known victims of child exploitation. (*Id.* at 37-38, 43). An administrative subpoena submitted to the internet service provider established that the internet protocol address was held by defendant. (*Id.* at 46-47).

With the information gathered by Dougher, another FBI agent obtained a search warrant for defendant's apartment. (*See id.* at 57-58). The warrant was executed on January 25, 2007. (*Id.* at 56-57). During this search, the FBI seized computers and equipment consistent with an advanced knowledge of computer technology. (*Id.* at 61-62, 66-67, 119-21). Within defendant's computer, agents discovered multiple images of child pornography contained in both "hidden" and "shared" files associated with the peer-to-peer software application LimeWire. (*Id.* at 71-72, 91-94, 104-05). Defendant had changed the default settings of LimeWire to disallow sharing of partial files and to

---

[1] The software was configured to search and download complete images from individual users rather than downloading partial images from multiple users in packets. (*See* Trial Tr. at 22-25).

share only files within a folder labeled as "lwshared," which was contained on a separate hard drive. (*Id.* at 85-88, 99, 124-25). According to FBI Special Agent Allyn Lynd, such changes, together with the software and hardware used by defendant, suggest an advanced knowledge of computers and peer-to-peer software. (*Id.* at 119-26). In a non-custodial interview with the FBI, defendant admitted to possessing the computers, downloading, cropping, and categorizing the images, and an advanced knowledge of computers and computer software. (*Id.* at 65-76). Although defendant said that "he doesn't like to share" images on peer-to-peer networks, he did not deny sharing the files. (*Id.* at 74-75).

Following his indictment by a federal grand jury, defendant pled guilty to possessing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B), and proceeded to trial before the court on the charge of transporting and shipping child pornography in violation of 18 U.S.C. § 2252(a)(1). At trial, defendant presented expert testimony that a glitch in the LimeWire software made it possible for an individual to unknowingly share files if the images were moved from a shared file to a file meant to be hidden. (*See id.* at 141-42, 149-51). The expert also testified that his analysis of an image of defendant's hard drive showed that it was configured not to share files. (*Id.* at 140). Defendant testified that he intended to share only music files and word documents, and that he specifically configured the LimeWire settings so it would not share downloaded images of minors engaged in sexually explicit activity. (*Id.* at 153, 159-61). Ruling from the bench, the court found that the computer hardware and defendant's changes to the LimeWire software defaults, along with his failure to deny that he was sharing images of child pornography, indicated beyond a reasonable doubt that defendant knowingly and intentionally shared unlawful images. (*Id.* at 222-29). The court credited the testimony of the FBI agents as worthy of belief, (*see id.* at 222-23), and found that the evidence presented at trial, as well as defendant's demeanor while testifying, belied his claim that

he did not intend to share the images. (*See id.* at 228-29). For those reasons, the court found defendant guilty of transporting and shipping child pornography.

### B.

Defendant first challenges the validity of his guilty plea to Count 2 of the indictment, charging him with possession of child pornography. According to defendant, his plea was involuntary because: (1) he believed that he would receive a less severe sentence; (2) he did not understand the Sentencing Guidelines; (3) he thought that he would be allowed to explain his benevolent intent in downloading and altering the subject images; and (4) he did not understand that his guilty plea might tarnish his credibility at trial and at sentencing.

### 1.

It is axiomatic that a guilty plea is valid only if entered voluntarily, knowingly, and intelligently, "with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183, 125 S.Ct. 2398, 2405, 162 L.Ed.2d 143 (2005), *citing Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970). A plea is intelligently made when the defendant has "real notice of the true nature of the charge against him[.]" *Bousley v. United States*, 523 U.S. 614, 618, 118 S.Ct. 1604, 1609, 140 L.Ed.2d 828 (1998), *quoting Smith v. O'Grady*, 312 U.S. 329, 334, 61 S.Ct. 572, 574, 85 L.Ed. 859 (1941). A plea is "voluntary" if it does not result from force, threats, improper promises, misrepresentations, or coercion. *See United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997). The Fifth Circuit has identified three core concerns in a guilty plea proceeding: (1) the absence of coercion; (2) a full understanding of the charges; and (3) a realistic appreciation of the consequences of the plea. *See United States v. Gracia*, 983 F.2d 625, 627-28 (5th Cir. 1993). Compliance with the admonishments required under Rule 11

of the Federal Rules of Criminal Procedure provides "prophylactic protection for the constitutional rights involved in the entry of guilty pleas." *See id.* at 627.

2.

After initially pleading not guilty, defendant pled guilty to Count 2 of the indictment without a written plea agreement. Defendant signed a factual resume, wherein he stipulated that:

> On or about January 25, 2007, in the Dallas Division of the Northern District of Texas, Samples, knowingly possessed matter, specifically, one Western Digital Hard Drive, model WD400, serial number WCAD12630027, that contained more than five visual depictions of minors engaged in sexually explicit conduct that were produced using materials that had been mailed, transported, and shipped in interstate and foreign commerce.

(Fact. Res. at 2). At rearraignment, defendant testified under oath that he reviewed the indictment with his attorney and understood the charges against him, (*see* Rearraign. Tr. at 5), that he read and understood the factual resume, (*see id.* at 19-20), that he understood the range of punishment for the offense, (*see id.* at 15-17), and that he committed all of the essential elements of the crime. (*Id.* at 20-21). Defendant also said that he was fully satisfied with his representation, (*see id.* at 5, 22-23), and that his guilty plea was not the result of any promises, threats, or assurances. (*Id.* at 6-8). To ensure that defendant's guilty plea was knowing and voluntary, the court inquired:

> THE COURT: Have you been threatened or pressured in any way to plead guilty to these charges?
>
> Mr. Samples, there are really no right or wrong answers to these questions. But if you feel there is any pressure to get you to plead guilty, then that's part of what goes into the Court's assessment of whether or not this is a voluntary plea.
>
> If you need to think about it for a minute, that's fine. But the truth is the only right answer.

THE DEFENDANT: There's no pressure. There's no outside influence.

THE COURT: So are you pleading guilty completely of your own free will?

THE DEFENDANT: Yes, ma'am.

THE COURT: Let me ask you why you are hesitating.

THE DEFENDANT: It's a serious thing. This is -- prior to this, I was an average Joe citizen. After this, I'm a convicted felon.

THE COURT: And that's absolutely one of the primary reasons why I need to make sure that what you're doing here today is free and voluntary. So not to be repetitive, but have you been in any way pressured or encouraged or in any way told to plead guilty today?

THE DEFENDANT: It's been recommended, and I agree with that.

THE COURT: Okay. So regardless -- yes, the recommendation. But putting aside the recommendation, are you entering into this freely and voluntarily, completely freely and voluntarily? No second thoughts.

THE DEFENDANT: Yes, ma'am.

(*Id.* at 6-8). This sworn testimony carries a strong presumption of verity in a subsequent post-conviction proceeding. *See Blackledge v. Allison*, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977); *United States v. Cothran*, 302 F.3d 279, 283-84 (5th Cir. 2002).

In an attempt to avoid his testimony at rearraignment, defendant belatedly protests that he pled guilty to Count 2 because he expected to receive a sentence of three to five years with credit for acceptance of responsibility, that he did not understand the possibility of "aggregate sentencing," and that his attorney advised him to plead guilty because "he saw no way to fight it and [defendant] would get a lesser sentence." (*See* Def. Mot. at Page ID 8-9). However, the rearraignment transcript shows that defendant was informed that he faced up to 10 years imprisonment upon conviction, and

that he could receive the maximum punishment notwithstanding any predictions by defense counsel. (*See id.* at 15, 18-19). Defendant acknowledged that he understood the judge's explanations about sentencing. (*Id.*). Under established Fifth Circuit precedent, "[a]s long as the [defendant] understood the length of time he might possibly receive, he was fully aware of his plea's consequences." *United States v. Rivera,* 898 F.2d 442, 447 (5th Cir. 1990) (internal quotations omitted), *citing Barbee v. Ruth,* 678 F.2d 634, 635 (5th Cir.), *cert. denied,* 103 S.Ct. 149 (1982). Nothing in the record supports defendant's conclusory and self-serving assertion that his plea was the result of assurances by counsel or was otherwise involuntary. These grounds for relief should be overruled. *See Salazar v. United States,* No. 3-08-CV-1799-L, 2008 WL 4791461 at *3 (N.D. Tex. Oct. 31, 2008) (conclusory assertions in section 2255 motion do not overcome presumption of verity attached to prior testimony that guilty plea was knowing and voluntary).

C.

In multiple grounds, defendant contends that his attorney: (1) failed to file a motion to suppress, inspect physical evidence, or permit defendant to personally review discovery materials; (2) did not adequately meet with defendant, consult him, and keep him apprised of case developments; (3) failed to present certain evidence and make certain arguments at trial; (4) did not object to certain testimony and exhibits; and (5) failed to fully understand the technical details of the case. Defendant also maintains that he received ineffective assistance of counsel on appeal.

1.

The Sixth Amendment to the United States Constitution guarantees a defendant reasonably effective assistance of counsel at all critical stages of a criminal proceeding. *See Cuyler v. Sullivan,* 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980). To prevail on an ineffective assistance of counsel claim, a defendant must satisfy the two-prong test established in *Strickland v.*

*Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the defendant must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *Id.*, 104 S.Ct. at 2064. Second, the defendant must prove that he was prejudiced by his attorney's substandard performance. *Id.* at 2067. There is a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance. *See Romero v. Lynaugh*, 884 F.2d 871, 876 (5th Cir. 1989), *cert. denied*, 110 S.Ct. 1311 (1990). In order to obtain federal habeas relief, a defendant must affirmatively show how the actions of his attorney deprived him of a fair trial. *See Czere v. Butler*, 833 F.2d 59, 63-64 (5th Cir. 1987).

2.

Many of the criticisms leveled at defense counsel involve his failure to challenge the procedures used by the FBI to identify defendant as the person sharing images of child pornography on a peer-to-peer network, and the subsequent search and seizure of his computers. "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S.Ct. 2574, 2583, 91 L.Ed.2d 305 (1986). Counsel had no basis for challenging the use of forensic software to download files from a peer-to-peer network because a user of file-sharing software has no reasonable expectation of privacy in his public files. *See, e.g. United States v. Borowy*, 595 F.3d 1045, 1048 (9th Cir.), *cert. denied,* 131 S.Ct. 795 (2010); *United States v. Stults*, 575 F.3d 834, 842-43 (8th Cir. 2009), *cert. denied,* 130 S.Ct. 1309 (2010); *United States v. Perrine,* 518 F.3d 1196, 1205 (10th Cir. 2008). Similarly, the use of information gathered from defendant's public files to

secure a search warrant was not improper. Thus, counsel was not ineffective for failing to file a motion to suppress on Fourth Amendment grounds.[2]

Defendant also complains that his attorney failed to personally review the computers that were seized, document his pretrial investigation, permit defendant to inspect the physical evidence, or keep him apprised of developments in the case. The record shows that defense counsel and his computer expert, Edward Lewis Chiarini, Jr., went to the FBI forensic laboratory to meet with the case agent and review the contents and configuration of defendant's computer. (*See* Trial Tr. at 140, 143-44). Defendant does not allege with specificity what additional investigation or consultation would have revealed, how counsel's investigation was deficient, or how his own review of the physical evidence would have changed the outcome of the trial. *See, e.g. Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005) (standard for establishing ineffective assistance of counsel based on failure to investigate).

Likewise, defendant has failed to establish that his representation at trial was constitutionally deficient. Defendant claims that his attorney did not fully understand the technical aspects of the case, failed to present certain evidence and make certain arguments, and did not object to testimony and exhibits that were misconstrued to suggest defendant's intent to share images of minors engaged in sexually explicit activity. (*See* Def. Mot. at Page ID 17; Reply Br. at 7-8, 18-19). However, defendant testified at length about how he configured the file sharing software so it would not share pornographic images. (*See* Trial Tr. at 158-61). Based on his demeanor and other evidence presented at trial, the court found that defendant's self-serving testimony was not worthy of belief.

---

[2] To the extent that defendant claims that the search warrant failed to meet the "particularity" requirement of the Fourth Amendment, he fails to elaborate on this claim or otherwise explain why an executing officer reading the description in the warrant would not reasonably know what items are to be seized. *See United States v. Simpson*, No. 3-09-CR-249-D(06), 2011 WL 721912 at *4 (N.D. Tex. Mar. 2, 2011), *citing United States v. Kimbrough*, 69 F.3d 723, 727 (5th Cir. 1995), *cert. denied*, 116 S.Ct. 1547 (1996).

(*See id.* at 228-29). Defendant has not shown that any of the evidence used against him -- including his resume and "non-incriminatory items" with suggestive names -- was inadmissible, or that the outcome of the trial would have been different had counsel objected to this evidence.

3.

Defendant contends that he received ineffective assistance of counsel on appeal because his lawyer did not consult him before filing a brief and failed to challenge his conviction on certain grounds, including those raised in his section 2255 motion.

"The Constitution does not require appellate counsel to raise every nonfrivolous ground that might be pressed on appeal." *Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir.), *cert. denied*, 110 S.Ct. 419 (1989); *see also Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 3312-13, 77 L.Ed.2d 987 (1983). Instead, counsel is obligated only to raise and brief those issues that are believed to have the best chance of success. *See Schaetzle v. Cockrell*, 343 F.3d 440, 445 (5th Cir. 2003), *cert. denied*, 124 S.Ct. 1156 (2004); *United States v. Williamson*, 183 F.3d 458, 463 (5th Cir. 1999). In order to prove ineffective assistance of appellate counsel, a defendant must show that the decision not to raise an issue on appeal fell below an objective standard of reasonableness. *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000), *citing Strickland*, 104 S.Ct. at 2064. This reasonableness standard requires counsel "to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful." *Id., quoting Williamson*, 183 F.3d at 462.

Appellate counsel raised two issues in a well-researched brief: (1) defendant should not have been sentenced under U.S.S.G. § 2G2.2; and (2) the district court misapplied the sentencing factors set forth in 18 U.S.C. § 3553(a). *See Samples*, 2010 WL 653719 at *1. Although counsel did not raise the additional grounds suggested by defendant, including illegal search and seizure claims and ineffective assistance of trial counsel, defendant has not shown that his conviction would have been

reversed had those claims been raised on direct appeal. In fact, most of the claims defendant believes should have been presented to the appeals court have been rejected by this court. *See Coker v. Thaler*, 670 F.Supp.2d 541, 554 (N.D. Tex. 2009) (appellate counsel was not ineffective for failing to appeal conviction on grounds that were considered and rejected on post-conviction review). These grounds for relief should be overruled.

### D.

Finally, defendant asserts various claims related to the LimeWire investigation, the search of his apartment, his interview with Agent Dougher, and the conditions of his confinement. As best the court understands these claims, defendant appears to allege that: (1) the initial FBI investigation into peer-to-peer sharing networks was unlawful; (2) the search warrant obtained as a result of that investigation was the "fruit of the poisonous tree"; (3) the FBI violated his *Miranda* rights; and (4) the conditions of his confinement prevented him from mounting a proper defense. (*See* Def. Mot. at Page ID 11-16, 18).

Post-conviction relief under section 2255 ordinarily is limited to questions of constitutional or jurisdictional magnitude, which may not be raised for the first time on collateral review without a showing of cause and prejudice. *See United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991), *cert. denied*, 112 S.Ct. 978 (1992). Other types of error may not be raised under section 2255 unless the defendant shows that the error could not have been presented on direct appeal and, if condoned, would result in a complete miscarriage of justice. *See United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir.), *cert. denied*, 113 S.Ct. 621 (1992). The only recognized exception to this rule is in an "extraordinary case" where "a constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" *Shaid*, 937 F.2d at 232, *quoting Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986).

Even if defendant can demonstrate "cause" for not raising these claims on direct appeal, he has not established "actual prejudice." His Fourth Amendment claims lack merit because there was no improper search. FBI agents were not required to give *Miranda* warnings to defendant because he was not under arrest during the interview. Contrary to defendant's assertion, his failure to deny sharing images of child exploitation during that interview was not an "adoptive admission" that violated his Fifth Amendment privilege against self-incrimination. Moreover, given the significant evidence of defendant's computer expertise and his voluntary guilty plea to Count 2 of the indictment, the challenged statements hardly "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170, 102 S.Ct. 1584, 1596, 71 L.Ed.2d 816 (1982) (emphasis in original omitted). Lastly, the claims related to the conditions at FDC Seagoville -- including complaints about the lighting conditions, ambient temperature, telephone system, and shoes provided to defendant -- do not constitute errors of constitutional or jurisdictional magnitude. *See United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995). These grounds for relief should be overruled.

## RECOMMENDATION

Defendant's motion to correct, vacate, or set aside sentence should be denied. His motion to expand the record [Doc. #9] should also be denied.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An

objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED:   September 15, 2011.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE